**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**                                      Chapter 7
-------------------------------------------------------------- x      Case No. 808-74860-reg
In the Matter of ROBERT J. PITTS, JR. a/k/a
BOB PITTS,

                Debtor.
-------------------------------------------------------------- x

MOKUBA NEW YORK LLC, RIBBTRIM, INC. and
ALAN SILVERMAN,

                                                                                    Adv. Proc. no. 809- 8230-reg

                Plaintiffs,
   - against -

ROBERT PITTS, JR.

                Defendant.
-------------------------------------------------------------- x

## MEMORANDUM DECISION

This matter is before the Court pursuant to two motions made in an adversary proceeding pending in the bankruptcy case of Robert Pitts, Jr. ("Debtor" or "Defendant"). Mokuba New York LLC, Ribbtrim Inc. and Alan Silverman ("Plaintiffs") seeking to have certain debts allegedly owed by the Debtor deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Plaintiffs have filed a motion seeking entry of summary judgment on the first cause of action pursuant to Bankruptcy Code § 523(a)(2)(A). The Debtor has filed a motion seeking to have a state court judgment entered post-petition against certain non-debtors upon which the Plaintiffs rely in their summary judgment motion, deemed void *ab initio* (the "Debtor's Motion"). The Debtor argues that upon the commencement of the Debtor's case, the automatic stay applied to actions against these non-debtor defendants and as a result, the orders entered by

the state court post-petition are void and of no force and effect. The Debtor also argues that the Plaintiffs' actions in the state court proceeding after the commencement of the Debtor's bankruptcy constituted a willful violation of the automatic stay pursuant to Bankruptcy Code § 362(k). In the alternative, the Debtor argues that if the automatic stay did not apply to the non debtor defendants, the Court should use its equitable powers and extend the automatic stay to the non-debtor defendants in the state court action pursuant to Bankruptcy Code § 105(a). For the reasons set forth below, the Court finds that the state court correctly concluded that the automatic stay did not apply to the non-debtor defendants and there are insufficient grounds to extend the automatic stay to the non-debtor defendants under the Court's § 105(a) injunctive powers. Furthermore, because the actions by the state court already took place, granting injunctive relief under Bankruptcy Code §105(a) at this point would not be appropriate. For these reasons, the Plaintiffs' post-petition actions in the state court proceeding did not violate the automatic stay. However, if this Court ultimately finds in this adversary proceeding that the Debtor's liability is derivative of the non-debtor defendants' actions then the post petition proceedings in the state court may be deemed a violation of the automatic stay, and the judgment obtained in the state court action against the non-debtor defendants would then be void and of no force and effect.

**Facts**:

On August 17, 2005, prior to the date the Debtor's petition was filed, the Plaintiffs commenced an action in the Supreme Court of the State of New York, New York County, against Microvisions Complete Computer Configurations, Inc., Microvisions, Microvisions One (I), Microvisions Two (II), Just Computers of New York, Inc., Microvisions CCC, Just Computers in New York, JCINY (collectively, the "Corporate Defendants") and the Debtor

(collectively with the Corporate Defendants, the "State Court Defendants") based on fraud, breach of contract, breach of express and implied warranty, and breach of the covenant of good faith and fair dealing (the "State Court Action"). In the State Court Action, the Plaintiffs alleged that, based on the fraudulent scheme of the State Court Defendants, they induced the Plaintiffs to enter into a contractual relationship with the Corporate Defendants whereby the Plaintiffs would pay for information technologies ("IT") goods and services that were to be provided by the State Court Defendants to the Plaintiffs. According to the complaint in the State Court Action, (i) the State Court Defendants fraudulently concealed from the Plaintiffs that they installed "bootleg" software on the Plaintiffs' computers instead of genuine Microsoft or other brand name software, (ii) the State Court Defendants provided the Plaintiffs with IT equipment that had incorrect specifications and configurations, and that they sold used IT equipment to the Plaintiffs while promising to install new IT equipment, and (iii) the State Court billed the Plaintiffs for services which were never performed. The Plaintiffs alleged that various false representations were made to deceive the Plaintiffs to pay consideration to the Corporate Defendants which was not earned, and the Corporate Defendants overcharged the Plaintiffs for goods and services and otherwise exploited the Plaintiffs' IT resources for the State Court Defendants' benefit. The complaint in the State Court Action includes the allegations that the Debtor, who was director, agent and sole shareholder or principal of the Corporate Defendants, was also liable along with the Corporate Defendants because he intermingled and controlled the Corporate Defendants and disregarded their corporate identity so as to defeat their corporate identity, and therefore the corporate identities of the Corporate Defendants should be merged into one entity for the purposes of their liabilities and obligations. The Plaintiffs asserted that the corporate veils of

each of the Corporate Defendants should be pierced, and the Debtor should be liable for the acts of the Corporate Defendants. Based on the complaint in the State Court Action, the Debtor's liability requires a finding that the Debtor's relationship with the Corporate Defendants was sufficiently close that as a matter of law, the Debtor was liable for the contractual obligations of the Corporate Defendants.

The State Court Defendants filed answers and took active roles in the litigation, which included several discovery disputes between the parties. On January 4, 2008, the State Court entered an order directing the Debtor and the Corporate Defendants to provide discovery to the Plaintiffs. On May 2, 2008, another order was entered striking the answer of the Debtors and the Corporate Defendants in the event that the Debtor and the Corporate Defendants did not produce certain discovery on or before May 23, 2008.

On May 23, 2008, the Plaintiffs made a motion to strike the answer of the Debtor and the Corporate Defendants on the grounds that they willfully failed to comply with prior orders of the State Court. The Defendants opposed the motion and filed a cross-motion to strike the complaint and to compel discovery.

On July 7, 2008, Hon. Louis Crespo, as special referee, granted the Plaintiffs' motion to strike the State Court Defendants' answer. Judge Crespo further directed the Plaintiffs to move before Justice Bernard Fried for entry of a default judgment. Accordingly, the Plaintiffs filed a motion for default judgment before Justice Fried returnable on September 10, 2008. By stipulation entered on August 20, 2008, the Debtor and the State Court Defendants agreed that the Plaintiff's motion for default judgment would be adjourned to September 17, 2008. On September 8, 2008 (the "Petition Date"), the Debtor filed a petition for relief under chapter 7 of

the Bankruptcy Code.

Justice Fried was advised that the Debtor filed for bankruptcy protection, and on September 25, 2008, Justice Fried *sua sponte* issued an order scheduling a hearing on notice to the State Court Defendants and their counsel of record to determine whether "there is any good reason why this action should not be severed and continued as to the non-bankrupt defendants, while the action remains stayed as to the bankrupt defendants as required by 11 U.S.C. § 362(a)(1)." The Debtor's bankruptcy counsel was not served with the order scheduling the hearing. At the hearing held on October 3, 2008 neither the Corporate Defendants nor the Debtor appeared. By order of the state court entered on October 6, 2008, the Debtor was severed from the State Court Action, and judgment by default as to all issues of liability was to be granted only against the Corporate Defendants. Because the Debtor was severed from the State Court Action prior to entry of judgment, the State Court made no findings that the Debtor participated in any fraud committed by the Corporate Defendants or that the Debtor was responsible as a matter of law for the actions of the Corporate Defendants. Pursuant to the October 6, 2008 order, Justice Fried held that either party could apply by order to show cause to vacate or modify the stay against the Debtor after obtaining a final order vacating the stay issued by the Bankruptcy Court in the Debtor's case. On January 20, 2009, the State Court entered a judgment by default as to all issues of liability only against the Corporate Defendants. An inquest was to be scheduled to fix damages, but such inquest has not taken place.

**Discussion:**

**1. Jurisdiction to Determine Applicability of the Automatic Stay**

The Plaintiffs and the Debtor agree that the State Court had the jurisdiction to determine

whether the automatic stay applied to the State Court Action, and that the Bankruptcy Court has the jurisdiction to review the decision by Justice Fried and make its own determination as to whether the automatic stay applied to stay any portion of the State Court Action.  The Court agrees.  The federal district courts, and by reference, the bankruptcy courts, have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334.   The automatic stay, which is an injunction issued by the bankruptcy court, is self-executing and is effective upon the filing of the petition.  *In re Gruntz,* 202 F.3d.1074, 1081 (9th Cir., 2000) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 315, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (other citations omitted)).   As the Ninth Circuit noted in *Gruntz*, the injunctive nature of the automatic stay imposes on affected parties an obligation to obey such decree until it is modified or reversed, even if there are grounds to object to the order.  *Id.* at 1082 (other citations omitted).  In addition, any action taken in violation of the stay, even if such action is a judicial proceeding, is void and of no force and effect.  *Kalb v. Feurstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940) *(citing Valley v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 353-54, 41 S.Ct. 116, 65 L.Ed. 297 (1920))*; 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir.1987); *Maritime Elec. Co. v. United Jersey Bank.,* 959 F.2d 1194, 1204 (3d Cir.1991); *Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 125-26 (9th Cir.1989).  Such act by a court in violation of the stay is not entitled to full faith and credit in the federal courts.  *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 482-83, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

      Courts have uniformly found that the bankruptcy court has sole and exclusive jurisdiction

to determine whether the automatic stay should be modified pursuant to section 362(d). *Cathey v. Johns-Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir. 1983), *In re Gruntz,* 202 F.3d at 1083; and *In re Mid-City Parking, Inc.,* 332 B.R. 798, 803 (Bankr. N.D. Ill. 2005). This sole and exclusive jurisdiction over any modification of the stay emanates from § 362(d), which states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section," and from the legislative history of § 362(d), which clearly identifies the bankruptcy court as the sole authority to grant relief from the stay. *Cathey v. Johns-Manville Sales Corp.,* 711 F.2d at 62, 63 (*citing* House Report No. 95-595, U.S.Code Cong. & Admin. News 1978, p. 5787, Notes of Committee on the Judiciary).

The Second Circuit has held that where a prepetition action is pending in federal court, that court has concurrent jurisdiction with the bankruptcy court to determine whether the automatic stay applies to the non-bankruptcy action. *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litigaton),* 765 F.2d 343, 347 (2d Cir. 1985) ("*Baldwin-United*"). Other courts have agreed with this analysis under the theory that a court has inherent jurisdiction to determine its own jurisdiction. *In re Mid-City Parking, Inc.*, 332 B.R. at 804 (citing *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1105-07 (9th Cir. 2005); *Baldwin-United,* 765 F.2d at 347; and *In re Conference of African Union First Colored Methodist Protestant Church,* 184 B.R. 207, 216 (Bankr. D. Del.1995) ("*Conference of African Union*")). Despite the presiding court's inherent jurisdiction to determine whether the stay applies, the Second Circuit and other courts have recognized that the ultimate determination of whether the automatic stay applies to a non-bankruptcy action lies with the bankruptcy court, which originally issued the injunction. *See Baldwin-United,* 765 F.2d at 346, 348-49; *Conference of African Union,* 184

B.R. at 216; *In re Hunt,* 93 B.R. 484, 488-89 (Bankr. N.D. Tex. 1988). Granting to the bankruptcy court the final say as to whether the automatic stay applies to an action pending in another court is also consistent with the bankruptcy court's power to enforce its own injunctions under the Supremacy Clause. *In re Mid-City Parking, Inc,* 332 B.R. at 798. Therefore, this Court has the authority to review the decision by Justice Fried and if this Court disagrees with his ruling, to determine on its own the extent to which the automatic stay applies with respect to any aspect of the State Court Action.

**2. Applicability of Bankruptcy Code § 362(a)(1) to the State Court Action**

In order to determine whether Justice Fried properly determined whether the automatic stay applied, Justice Fried's rulings must be examined. In the State Court's order scheduling hearing, Justice Fried noted that the automatic stay does not apply to non-debtor co-defendants except "under certain limited circumstances" and cited to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Oxford Venture Partners, LLC,* 13 A.D.3d 89, 786 N.Y.S.2d 161, 162 (1st Dept. 2004). The order scheduling hearing was issued to determine whether the circumstances in the State Court Action warranted a finding that the stay applied equally to the Debtor and to the Corporate Defendants. The Corporate Defendants failed to appear at the hearing and Justice Fried ruled that the automatic stay prevented the Debtor from remaining in the State Court Action and severed him entirely from the State Court Action. As a result, the causes of action regarding the Debtor's role in the fraudulent scheme of the Corporate Defendants were severed from the State Court Action and remain undetermined to date. Justice Fried also held in a subsequent order that prosecution of the State Court action against the Corporate Defendants was not stayed. Therefore it appears that Justice Fried concluded there were no grounds to find that

the automatic stay applied to the Corporate Defendants. Because Justice Fried severed the Debtor from the State Court Action, there are no findings at all as to the Debtor - not that he committed fraud individually or that the corporate veils of the Corporate Defendants should be pierced. Justice Fried made no findings that the acts of the Corporate Defendants should be imputed to the Debtor. His rulings show a deference to the imposition of the automatic stay.

The Court believes the State Court correctly framed the issue before it regarding the applicability of the automatic stay to the Corporate Defendants, and correctly found that Bankruptcy Code § 362(a)(1) did not apply to the Corporate Defendants. Section 362(a)(1) stays "the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Subsection 362(a)(1) is generally not available to non-debtors. *Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61, 65 (2nd Cir. 1986) ("*Teachers*"); *In re Bidermann Industries U.S.A., Inc.,* 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996). Justice Fried recognized that a narrow exception to this proposition exists, but did not conclude that the facts in the case before him would warrant a finding that the stay applied to the Corporate Defendants. The Debtor now urges this Court to find that, Justice Fried's rulings notwithstanding, the exception did apply to the Corporate Defendants and they were covered by the automatic stay. According to the Debtor, the Court should adopt the argument made by the Plaintiffs in this adversary proceeding that the Debtor and the Corporate Defendants are one and the same solely for the purposes of this motion, and find that based on this shared identity, the judgment against the Corporate Defendants is equivalent to a judgment against the Debtor. As a

result, the continuation of the State Court Action post-petition violated the automatic stay and the rulings of the State Court post-petition are void *ab initio*.

The leading case enunciating the exception to the general rule that the automatic stay does not apply to non-debtors is *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) ("*A.H. Robins*").  In *A.H. Robins,* the Court of Appeals for the Fourth Circuit found that in "unusual circumstances," the automatic stay could be extended to actions against non-debtors.  *Id.* at 999.   The debtor in *A.H. Robins* manufactured the Dalkon Shield, an intrauterine device, which was later discovered to be defective.  As a result, thousands of actions were initiated against the debtor and its insurance provider, forcing the debtor to file for bankruptcy.  The plaintiffs in the non-bankruptcy actions sought to sever their actions against the debtor in order to proceed against the co-defendants.  The Fourth Circuit affirmed the district court's decision to issue an injunction staying the plaintiffs' suits against the debtor, and held that a court may stay proceedings under "unusual circumstances," which would require "something more than the mere fact that one of the parties to the lawsuit has filed . . . bankruptcy."  *A.H. Robins,* 788 F.2d at 999.   According to the court in *A.H. Robins,* "unusual circumstances" would include a situation "where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  *Id.*  The court identified such a situation where a suit has been commenced against a third party who is entitled to absolute indemnity by the debtor as a result of any judgment that might be entered against the third party in the non-bankruptcy case.  *Id.*

Although the Plaintiffs argue that in the *Teachers* decision, the Second Circuit implicitly

rejected this theory, the Court disagrees. In *Teachers,* the plaintiffs entered into a long-term loan with the defendants for the development and construction of an office building in Sacramento, California, which the defendant subsequently breached. After a trial, judgment was entered in favor of the plaintiff. Three days later, a petition for relief under chapter 11 was filed by one of the defendants which was a partnership, and the debtor partnership obtained a temporary restraining order from the bankruptcy court (I) restraining the plaintiff from enforcing the judgment against the debtor partnership and (ii) preventing the plaintiff from enforcing the judgment against each of the three defendant general partners, none of whom had filed bankruptcy petitions. The question before the Second Circuit on appeal was whether the district court wrongly denied the request by the non-debtor partners for a stay of the proceedings against them. The Second Circuit concluded that the bad faith conduct of the non-filing partners did not provide sufficient grounds for granting injunctive relief to extend the stay to these non-debtors under § 105(a).

In its ruling, the Second Circuit held that "it is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants" and cited to a number of cases in support. *Teachers,* 803 F.2d at 65. The Second Circuit did note the *A.H.Robins* case prefaced its citation with "*But cf.*" which has led several courts to conclude that the Second Circuit has implicitly rejected the "unusual circumstances" theory set forth in *A.H. Robins* for extending the stay to non-debtor entities.[1]

Second Circuit case law post- *Teachers* supports the vitality of *A.H. Robins* in this

---

[1] See *Signature Bank v. Ahava Food Corp.,* 2008 U.S. Dist. LEXIS 67464, *5 (Bankr. S.D.N.Y. 2008); and *Bidermann Indus. USA v. Zelnick,* 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996).

Circuit. In *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282 (2d Cir. 2003), the Court of Appeals for the Second Circuit concluded that the automatic stay applied to an action commenced against, *inter alia*, a non-debtor corporation which was wholly owned by an individual chapter 11 debtor. According to the Second Circuit, "the automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Id*. at 287.

The Second Circuit in *Queenie* listed several examples of such immediate adverse economic consequences including: (1) a claim against a non-debtor for an obligation for which the debtor was a guarantor, (2) a claim against a debtor's insurer, and (3) actions where there is an identity between the debtor and third-party defendant that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, and specifically cited to *A.H. Robins* in support of this third instance. *Id.* at 288.

While it is clear from *Queenie* that the Second Circuit has not implicitly rejected *A.H. Robins,* it is equally clear that the application of this exception does not apply in our case. In our case, there is no risk to any reorganization if the stay is not extended to the Corporate Defendants because the Debtor is liquidating. The imposition of liability against the Corporate Defendants only serves to fix liability against the Corporate Defendants at this point, and will not hamper the bankruptcy proceedings pending before this Court. In fact, there is no evidence that the continuation of the State Court Action post-petition had any effect on the Debtor's bankruptcy case as the Debtor was severed from the State Court Action.

The Debtor's reliance on *Neuman v. Hospital Consultants (In re Neuman),* 128 B.R. 333 (Bankr.S.D.N.Y. 1991) is similarly unavailing. In *Neuman,* Carl

12

Neuman filed a petition for relief under chapter 11 of the Bankruptcy Code. The debtor and his spouse were the 78% owner of stock in a corporation which had not filed for relief under the Bankruptcy Code. The debtor's case was marked by significant litigation and an operating trustee was appointed. After much litigation, the trustee and the debtor negotiated a settlement. The bankruptcy court approved the settlement over one creditor's objection, but before the bankruptcy court entered an order approving the settlement, another creditor commenced a shareholders derivative action seeking to, *inter alia,* remove the debtor as officers and directors of the corporation in which the debtor and his wife owned 78% of the stock. The debtor responded with an order to show cause seeking to restrain the creditor from continuing the action and finding the creditor in violation of the automatic stay. The court determined that since the debtor owned 78% of the stock and the other companies involved were wholly owned subsidiaries of the corporation, there was such an identity between the entities as to render the derivative action in violation of the automatic stay. The court concluded that any relief granted in the state court would have affected the settlement agreement approved by the bankruptcy court, and furthermore, the complaint actually named the debtor both individually and as a trustee for the corporations.

The *Neuman* case does not apply to the case before this Court. First, the debtor in *Neuman,* like the debtor in *Queenie* and unlike the Debtor in this case, were seeking to reorganize under chapter 11 of the bankruptcy code, and the actions taken against the non-debtor defendants were found to have had a significant and immediate negative impact on the debtor's ongoing bankruptcy cases. The same cannot be said for this case, as the mere existence of a claim against a corporation wholly owned by the Debtor does not affect his bankruptcy.

There has been no finding that there is such identity between the Debtor and the Corporate Defendants that the judgment against the Corporate Defendants is tantamount to a judgment against the Debtor. A finding that there is an identity between the Corporate Defendants and the Debtor requires a legal conclusion that Justice Fried did not make and which may be critical to the success of the Plaintiff's adversary proceeding pending before this Court. Without a finding that the Debtor is liable as a matter of law for the debts of the Corporate Defendants the Plaintiffs seemingly have no independent claim in this case because the contractual relationship at issue in this adversary proceeding was between the Plaintiffs and the Corporate Defendants. Based on the record before the Court and having reviewed the record in the State Court, this Court cannot find at this point that there is an identity between the Debtor and the Corporate Defendants as urged by the Debtor. Any such finding must be established in this adversary proceeding by summary judgment or by trial. Since the Court does not find that the automatic stay applied to the Corporate Defendants in the State Court Action, and the Debtor was severed from the State Court Action, the Plaintiffs did not violate the automatic stay by continuing to participate in the State Court Action post-petition. Therefore, the Plaintiffs cannot be liable for sanctions for their actions under § 362(k) of the Bankruptcy Code.

**3. Stay of the State Court Action under Bankruptcy Code § 105(a)**

To the extent the Debtor requests that this Court use its powers under § 105(a) to extend the automatic stay to the Corporate Defendants, the Court denies the request. As noted by the Bankruptcy Court for the Southern District of New York in *In re Bidermann,* the court may only issue such injunctive relief if the court finds that "the debtor would suffer some cognizable prejudice if the injunction did not issue." 200 B.R. at 783 (other citations omitted). The burden

is on the moving party to show by clear and convincing evidence that injunctive relief is warranted. *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1146, n.3 (5th Cir. 1987). Finally, such injunctive relief would not apply *nunc pro tunc*, but would be prospective in nature. *In re Bidermann,* 200 B.R. at 782-83 (citing *A.H. Robins*, 778 F.2d at 1001). Because any relief under § 105(a) would be prospective, granting injunctive relief to stay the State Court Action would not provide the Debtor with any real relief because the State Court has already made its rulings, which cannot be voided under this section. Therefore, even if the Court were to find that the Debtor has established grounds for extending the stay to the Corporate Defendants under § 105(a), the judgment against the Corporate Defendants would still stand and the Plaintiffs would only be precluded from continuing the inquest. As a result, relief under this section is not appropriate under these circumstances.

**4. Applicability of the Findings in the State Court Action to the Dischargeability Action**

Having found that the State Court correctly concluded that the automatic stay did not apply to the Corporate Debtors in the State Court Action and that there are no grounds to extend the stay to the Corporate Defendants under § 105(a), the Court now examines the Debtor's argument that even if this Court finds that the continuation of the State Court Action against the Corporate Defendants post-petition did not violate the stay, the stay prohibits the Plaintiffs from using the judgment obtained against the Corporate Defendants in the State Court Action in this adversary proceeding. According to the Plaintiffs, the automatic stay does not bar them from using collateral estoppel to preclude the Debtor from re-litigating the issues of fraud resolved in the judgment obtained against the Corporate Defendants.

The Court concludes that the stay does not bar the Plaintiffs from using collateral

estoppel offensively against the Debtor in this adversary proceeding. The automatic stay would never preclude this Court from making a determination in this adversary proceeding, nor could any action taken by the Plaintiffs in this adversary proceeding violate the automatic stay as to the Debtor. However, to the extent this Court concludes that the Debtor is derivatively liable for the actions of the Corporate Defendants, then the Court will be required to re-examine whether the automatic stay was applicable to the Corporate Defendants upon the filing of the Debtor's petition. As a result, the continuation of the State Court Action against the Corporate Defendants post-petition may then be deemed a violation of the automatic stay. This is because if the Plaintiffs are successful in piercing the corporate veils of the Corporate Defendants, then the unusual circumstances warranting application of the stay to non-debtors exist because the judgments against the Corporate Defendants will have an immediate, adverse effect against the Debtor.

**Conclusion**:

For the foregoing reasons, the Debtor's Motion is denied. A status hearing on the Plaintiff's motion for summary judgment is scheduled for January 13, 2010 at 9:30 a.m. An order memorializing this decision shall be entered forthwith.

Dated: Central Islip, New York
      December 8, 2009                  By: */s/ Robert E. Grossman*_____
                                                   Robert E. Grossman
                                                   United States Bankruptcy Judge